## FLORIDA REAL ESTATE COMM., et al ·v. HIME.

Real Estate Commission.

June 29, 1951.

W. H. Poe, Orlando, for the Commission.

Malcolm S. H. Kneale, Rosenhouse & Rosenhouse, David B. Newsom, all of Miami, for defendant.

Chairman O. P. SWOPE, and Commissioner FRANK A. LEE participated in the hearings and disposition of the case.

## BY THE COMMISSION.

On July 18, 1945 the defendant obtained from the owners, Captain Ben Sobraski and Hermia de Conyers Sobraski, an exclusive listing on lot 22, block 3 of Trail Granada subdivision in Dade County, for sale at a net price of $9,000. The listing was for 30 days from July 18, 1945. The broker was entitled under the language employed to a commission of 7½% on the sales price, and/or to all he obtained over $9,000. Defendant procured Myrtle Evans as a prospect, at a price of $9,200. The time prescribed in the listing had then expired but the parties, by their acts, extended it.

Defendant, however, informed the Sobraskis that he had a prospect who had deposited $750—but that she would not pay the price, or in the price range. He informed them that he would have to have another listing at $8,000. They executed the new exclusive listing on August 29, 1945 for a 30 day period. This listing

authorized the defendant to sell at any price not less than $8,000 and retain all over that figure as his compensation, and/or in consideration of advertising and efforts to sell, the owners agreed to pay him 7½% of the sale price.

The defendant, on September 4, 1945, produced a form of contract signed by Myrtle Evans and induced the Sobraskis to sign it. It called for a purchase price of $9,200. Of this amount, defendant received $1,200.

The form of exclusive listing employed by defendant is ambiguous. In one paragraph of the second listing it is first provided that the broker may offer the property at $8,000 and retain all over that amount as his compensation. The first listing was the same except that the figure was $9,000. Each listing next states that it is agreed that if the property is sold at any price and upon any terms, the defendant would be paid 7½% of the sale price. If the property here was sold under the second listing for $9,200, defendant would be entitled to $1,200 if the first clause controls, or $690 if the second controls—and $1,890 if he is entitled to be paid under both of the clauses. The latter would certainly be unconscionable.

We hold that the true meaning is that the broker would be entitled to elect between these clauses, and the fact that defendant collected under only one, and did not attempt to collect under both, confirms us in our interpretation.

We find from the preponderance of the evidence that the defendant had procured a verbal offer of $9,200 for the property from Myrtle Evans before he secured the second listing from the Sobraskis. We find that he informed the Sobraskis that he had a prospect, but that the prospect would not pay $9,000 for the property and that he had a deposit of $750 to apply on the purchase price, but he could not sell it unless the Sobraskis would give him a new listing at $8,000. We find that defendant concealed from the Sobraskis that Myrtle Evans would pay $9,200 for the property. Of course, if the property sold for $9,200 under the old listing, defendant would have been entitled to only $690—which sum would have been in excess of the usual commission of $460.

We understand that a broker stands in a confidential relation to an owner who lists property with him, and that when he deals with such person in his own interest, he is required to exercise the utmost good faith, and to inform that person of every fact that might reasonably induce such owner to refuse to accede to the broker's request or demand, to alter his own position for the worse.

We find that defendant failed in that duty to the financial loss to his principal, and thereby became guilty of fraudulent and dishonest dealing within the meaning of chapter 475, Florida Statutes 1941 and 1949.

We have not overlooked the fact that the Sobraskis knew that the price was $9,200 when they paid the $1,200 commission; but they had no means of knowing that the ultimate purchaser and the ultimate purchase were the same ones that were the inducing cause of the new listing, and therefore were without knowledge that they had been defrauded, so that they merely protested that they thought $1,200 was an exorbitant commission, and did not refuse to pay it.

We find that the defendant has violated the real estate license law and that his registration should be suspended for a period of one year.